## R. E. COBB v. ANDREW R. FRENCH.[1]

July 15, 1910.

Nos. 16,635—(199.)

**Generally criminal prosecution will not be restrained.**

Although, when the destruction of property rights is threatened, a court

[1]Reported in 127 N. W. 415.

---

[Note] Injunction against criminal proceedings, see note to Crighto v. Dahmer (Miss.) 21 L. R. A. 87.

of equity may in its discretion enjoin a criminal prosecution, the general rule is that an action for an injunction will not lie to restrain a criminal prosecution.

### Same — demurrer sustained.

The complaint alleges the invalidity of chapter 498, Laws 1909, prohibiting the operation by unlicensed persons of an apparatus designed to test the quality of milk and cream, and asks that defendant be restrained from instituting criminal prosecutions to punish violations of the law. *Held*, the complaint states no cause of action.

Action in the district court for Ramsey county to restrain defendant from attempting to enforce chapter 428, p. 516, Laws 1909, as against plaintiff. Defendant demurred to the complaint on the ground that the same did not state a cause of action. From an order, Hallam, J., overruling the demurrer, defendant appealed. Reversed.

*George T. Simpson*, Attorney General, and *Lyndon A. Smith*, Assistant Attorney General, for the State.

*Durment, Moore & Sanborn*, for respondent.

O'BRIEN, J.

Chapter 428, p. 516, Laws 1909 (R. L. Supp. 1909, § 1743), provides that all milk and cream received or purchased for the purpose of manufacturing the same into butter or cheese shall be received or purchased by weight, and payment therefor to be upon the basis of the butter fat contained, the amount of which shall be ascertained by what is known as the "Babcock test," made by the use of a mechanical apparatus. Chapter 498, p. 623, Laws 1909, is entitled "An act providing for the licensing of operators of testing apparatus and prescribing a penalty for its violation." Section 1 reads: "No person shall operate a milk or cream testing apparatus duly approved by the dairy and food commissioners to determine the percentage of butter fat in milk or cream for the purpose of purchasing the same either for himself or another, without first securing a license from the dairy and food commissioner of this state, or from one of his duly appointed assistants or inspectors, authorizing such person to so

operate such tester." The license fee required is one dollar for two years. A violation of the act is made a misdemeanor.

The plaintiff is engaged in the business of buying cream and manufacturing and selling butter, and employs a large number of agents located in different parts of the state, who purchase cream on his account and necessarily make the tests required to ascertain the quality of the cream. The defendant is the dairy and food commissioner of the state, charged with the duty of enforcing the provisions of the law referred to. In this case plaintiff seeks an injunction to restrain the arrest of himself or any of his agents for the violation of chapter 498, and insists that he is entitled to that relief upon the ground that the statute is invalid; that its attempted enforcement will subject the plaintiff to harassing and injurious prosecutions, which will be expensive and constitute an interference with plaintiff's property rights; that the defendant threatens prosecutions; and asks that defendant be restrained from so doing.

Defendant interposed a general demurrer, alleging that the complaint failed to state a cause of action, which was overruled by the learned trial judge; his reasons for so doing being set out in a memorandum attached to the order. Upon the oral argument of the appeal taken by defendant, it was suggested from the bench that the action would not lie, inasmuch as it was for the sole purpose of enjoining the institution of criminal proceedings. Thereupon counsel requested time to file additional briefs upon that question, which have since been received and considered. As our conclusion is that the action cannot be maintained, for the reason suggested, it is unnecessary to consider the other questions urged upon the argument.

It is well settled that a court of equity will not, by injunction, restrain the institution of criminal prosecutions, unless the prosecution involves some trespass upon property, or invasion of property rights, which will cause irreparable injury. In some extreme cases, where it is apparent that the maintenance of the prosecution may result in the destruction of property to the injury of the defendant, the fact that a criminal prosecution is involved in the proceeding

will not, of itself, prevent a court of equity from granting relief. But in every case the probable, and, we think, direct, injury to the property must be shown, entirely distinct from the proceedings to punish personally for the commission of the crime. Such cases are considered as exceptions to the general rule, and are based upon the theory that it would be inequitable to permit the infliction of irreparable injury pending judicial determination whether or not a crime had been committed, or that from the circumstances involved the property of the one prosecuted cannot be protected by the defense he may interpose to the accusation. High, Injunctions (4th Ed.) § 68; 22 Cyc. 903.

We have, therefore, only to consider whether this case comes within any of the exceptions. A mere statement of the case shows that it does not.

The law forbids the use of certain apparatus for testing the quality of milk and cream by any person who has not obtained a license, and provides that any unlicensed person who so acts shall be guilty of a misdemeanor. In this respect the enactment does not differ from one which forbids, unless licensed, peddling, shoeing horses, practicing law, dentistry, or medicine, selling intoxicating liquors, or carrying on any other avocation which it is proper to supervise or regulate by the issuance of licenses. Nor is it possible to distinguish such prosecutions from any other prosecutions, the object of which is to compel obedience to law by inflicting personal punishment for the commission of crime. The fact that the violation of the act in question amounts to a crime which is only such because prohibited, and may not in itself indicate moral depravity, has no bearing upon the question involved. The action which it is alleged the defendant threatens to take would not amount to an interference with property, nor foreshadow irreparable injury. The proceeding threatened has no reference whatever to property or property rights, but would only question the right of an individual to engage in a specified occupation without first procuring a license so to do. That is entirely a personal right, and the prosecution for failure to take out a license does not involve the seizing or destruction of

property, nor the use, to any extent, of private property for public purposes.

The federal courts have in many familiar cases held that public officers would be restrained from promulgating rate schedules until the sufficiency of the rates provided for could be determined, the validity of the rates unavoidably depending upon the question of fact which is held to be a judicial question. In Ex parte Young, 209 U. S. 123, 148, 28 Sup. Ct. 441, 449 (52 L. Ed. 714, 13 L. R. A. [N. S.] 932) this principle was extended to an act of the legislature establishing railroad rates, and there was sustained an order of the federal circuit court restraining public officers from bringing any proceeding, civil or criminal, to compel obedience to the statute. Even there, however, the distinction we have made was pointed out. The court said: "* * * The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character and the ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the legislature is complete in any event." We would hesitate to claim for the judicial department of this state jurisdiction so far-reaching as that implied in Ex parte Young. Should we so hold, that case would not be an authority for the maintenance of this action.

Because of the fact that the final decision as to its jurisdiction rests with the court itself, no higher duty is imposed upon a court than to carefully guard against being led into an unwarrantable assumption of power. There is great force in the argument that judicial procedure should be altered sufficiently to remove those purely technical and artificial methods which undoubtedly often tend to obstruct substantial justice, but no one should be heard to advocate weakening to the slightest extent by judicial construction any of the great constitutional safeguards for the preservation of human liberty and equality found in our organic law. There are cases in which it is the highest duty of a court of equity to exercise its power to restrain a threatened wrong, but the fundamental principles underlying those cases are exactly the same now as they were when the constitu-

111 M.—28.

tion of Minnesota was adopted. Social environments and methods of production change, and with each change new facts develop, which alter the superficial appearance of conditions without to any extent impairing fundamental legal principles.

In this case the regularly established legal procedure is adequate and must be followed. Plaintiff, when brought before the court upon the accusation that he has violated the law in question, may interpose his full defense, and will be then in the full possession of all his rights including a trial by jury. If the court is now at his instance to entertain a suit in equity to prevent his prosecution, why should not the court entertain a suit to restrain him from violating this statute, or the commission of any other offense against the laws of this state, with the result of destroying the right of jury trial. The rule that equity will not enjoin the commission of crime is no better settled than that it will not interfere with criminal prosecutions. They are correlated. It is proper to again reiterate, what we have already said, that where there is a direct wrongful invasion of property rights the fact that the wrongful act constitutes a crime will not of itself prevent a court of equity from exercising its undoubted prerogative to restrain irreparable injury.

This is not such a case. Notwithstanding the allegations of the complaint showing the magnitude of plaintiff's business, we fail to see how any property right is involved which would not be equally so in any case where plaintiff was threatened with arrest for a breach of the peace or any other offense. The allegation that several prosecutions are threatened must be considered from the standpoint of experience, and that fails to show any disposition upon the part of public officers to unnecessarily oppress those engaged in legitimate business.

We hold this is an attempt to restrain by injunction a criminal prosecution; that no property right is involved which makes this case an exception to the rule that such an action will not be entertained by a court of equity; that it is apparent from the complaint, if any such prosecution is instituted, the defendant will have an adequate and complete remedy at law.

The demurrer should have been sustained, and the order overruling it is reversed.