# MILTON DAIRY COMPANY v. GREAT NORTHERN RAILWAY COMPANY and Others.[1]

January 2, 1914.

Nos. 18,364—(26).

**Injunction—shipment of cream—enjoining prosecution of criminal action.**

Action by a creamery company engaged in manufacturing butter from cream, to enjoin certain carriers from complying with, and the attorney general from enforcing, Laws 1913, c. 433, regulating shipment of cream on railroads within the state, on the ground that such act is unconstitutional and compliance therewith would interfere with the supply of cream necessary to its business and that of other manufacturers similarly situated, thus causing great losses and eventual destruction of their business, *held* essentially one to enjoin the prosecution of criminal actions, and hence not maintainable as to any of defendants, notwithstanding the multiplicity of such actions against the carriers incident to enforcement of the statute; plaintiff's injury being merely consequential and incidental, without trespass against its property rights, and therefore insufficient to give it any proper status as plaintiff in the premises.

Action in the district court for Ramsey county against 10 railroad companies, 7 express companies, and Lyndon A. Smith, to determine that the act of 1913, regulating the shipment of cream upon the railroads of the state, was void; to enjoin defendants other than defendant Smith from observing the requirements of the act and from refusing to receive and ship cream to plaintiff and others, and restraining defendant Smith, as attorney general or otherwise, pending the determination of the action, from commencing any proceeding against defendants to compel them to observe the statute. From an

[1] Reported in 144 N. W. 764.

Note.—For authorities on the question of injunction against criminal proceedings, see notes in 21 L.R.A. 84; 2 L.R.A.(N.S.) 631; 25 L.R.A.(N.S.) 193; and 34 L.R.A.(N.S.) 454.

order, Catlin, J., granting plaintiff's motion for a temporary injunction, defendant Lyndon A. Smith appealed.  Reversed.

*Lyndon A. Smith,* Attorney General, and *John C. Nethaway,* Assistant Attorney General, for appellant.

*Durment, Moore & Oppenheimer,* for respondent.

PHILIP E. BROWN, J.

Appeal by defendant Smith from an order directing issuance of a temporary injunction enjoining defendant railway and express companies, pending determination of the action, from complying with Laws 1913, p. 632, c. 433 (G. S. 1913, §§ 4385, 4386), regulating shipment of cream on railroads within the state, and also restraining defendant Smith, as attorney general or otherwise, from bringing actions or proceedings to compel any of his codefendants to comply therewith and from enforcing its penal provisions.  The order was granted on the complaint and affidavits in support thereof, after answer interposed by defendant Smith, the record disclosing none other.

The complaint alleged plaintiff's ownership of an established business in St. Paul for manufacturing butter from cream, of great value, its good will alone being worth $25,000, with a fixed trade and many customers in this and adjoining states, from whom large quantities of cream were bought and shipped to plaintiff's factory, the greater part of which came by rail from places more than 65 miles distant.  It then substantially continues:  Many other large manufacturers of butter in the state are similarly circumstanced, and before the act went into effect defendant carriers transported the cream mentioned to plaintiff and to them, on passenger trains, in express and baggage cars, under published tariff rates for intrastate transportation, but since have refused to receive the cream for carriage in Minnesota, except for distances not exceeding 65 miles, unless accompanied by a certificate of pasteurization, which regulation cannot be complied with.  Further, defendant express companies have no refrigerator service, nor defendant railway companies on passenger trains, and the same could not be instituted within less than a year, and would require prohibitive freight charges.  Moreover, both

methods of shipment provided in the act are unnecessary, either for protection of health or otherwise; and plaintiff cannot procure cream requisite for its business with necessary expedition, except by shipments over defendants' lines as heretofore, and their refusal to transport has greatly damaged such business, causing heavy loss, and persistence therein or enforcement of the act will result in destruction not only of plaintiff's business but also that of other manufacturers similarly situated. The act is alleged to be discriminative and otherwise void as in conflict with both state and Federal Constitutions, notwithstanding which defendant carriers will continue to comply therewith, fearing imposition of the penalties prescribed for violations. Defendant Smith is connected with the above allegations as being attorney general of the state, and, it is charged, will, unless forbidden, institute actions against his codefendants to compel them to comply with the terms of the act in case of their refusal, and cause impositions of the penalties prescribed, thus entailing multiplicity of suits and fines, the fear of which has induced obedience. Plaintiff purports to sue on its own behalf and likewise for all others similarly situated who shall see fit to make themselves parties.

The statute assailed prohibits shipment of cream for a distance of more than 65 miles over any railroad in the state, except in refrigerator cars kept effectively iced and in sanitary condition, unless the cream shall have previously been pasteurized. Railroad companies are forbidden to ship or receive for shipment cream except as provided, and violations constitute misdemeanors.

Court of equity's power to determine the validity of penal statutes and to restrain criminal prosecutions thereunder when unconstitutional, where such would directly result in irreparable injury to property rights, is undoubted, the question being the propriety of its exercise in a given case, and the rule, furthermore, being subject to the qualification that it does not authorize actions the gravamen of which is to enjoin criminal proceedings. See note, 25 L.R.A. (N.S.) 193; Minneapolis Brewing Co. v. McGillivray (C. C.) 104 Fed. 258, 272.

This court, in accord with many others, both state and Federal, for reasons to be adverted to later, has sanctioned such relief reluc-

124 M—16.

tantly and cautiously. In Cobb v. French, 111 Minn. 429, 127 N. W. 415, a cream buyer and butter manufacturer sought an injunction restraining the state dairy and food commissioner from causing arrests of plaintiff and his agents for violations of an alleged invalid penal statute, requiring the licensing of operators of cream-testing apparatus, because enforcement would subject him to both irreparable damage in his business and expensive and injurious prosecutions. The court recognized the general doctrine, but denied relief, holding the action one to restrain the institution of criminal prosecutions involving no trespass against property, the latter, furthermore, being held an element necessary to be shown, entirely distinct from criminal prosecutions. The doctrine of that case was approved in Nelson v. City of Minneapolis, 112 Minn. 16, 18, 127 N. W. 445, 29 L.R.A.(N.S.) 260, where it was held that the purpose of the latter action was not to restrain a criminal prosecution, but to enjoin continued seizure and destruction of milk, sought to be justified under an ordinance alleged void. The court differentiated Cobb v. French, in recognizing the actual destruction of property as an injury directly resulting. In Basting v. City of Minneapolis, 112 Minn. 306, 127 N. W. 1131, 140 Am. St. 490, the rule was further recognized, and the reluctance of this court to interpose equitable interference with penal statutes was again manifested.

The present case involves neither trespass nor direct injury to property, but differs from Cobb v. French in that plaintiff does not claim to be threatened with criminal prosecutions under the act assailed. Indeed, it argues for the relief prayed because it is so circumstanced as to be unable to violate the statute and make test at law of its validity. Plaintiff's effort, then, is not directed at compelling defendants to observe a statute, but, on the contrary, to violate it, and the accomplishment of this result is sought through judicial examination thereof in equity, involving determination of its constitutionality, aided by a temporary injunction. Several questions are discussed, but all lead from and bring us directly to consideration of what we deem the primary question involved, namely: Does the complaint state a cause of action against any of defendants?

This objection may be raised prior to judgment. Hamilton v. McIndoo, 81 Minn. 324, 327, 84 N. W. 42; 2 Dunnell, Minn. Dig. § 7681.

As said in Wadhams Oil Co. v. Tracy, 141 Wis. 150, 156, 123 N. W. 785, 787, 18 Ann. Cas. 779, it will not do "to make of the courts, by equitable interference, a sort of superior upper house to consider and pass, in general and particular as well, upon legislative enactments." Likewise, it was declared in Gibbs v. Green, 54 Miss. 592, 612, quoted with approval in Benz v. Kremer, 142 Wis. 1, 125 N. W. 99, 26 L.R.A.(N.S.) 842:

"Neither an executive nor a ministerial officer can be enjoined generally from putting a law in force. Mississippi v. Johnson, 4 Wall. 475 [18 L. ed. 437]. The complainant who seeks an injunction must be able to specify some particular act, the performance of which will damnify him, and it is such act alone that he can restrain. This court has no power to examine an act of the legislature generally and declare it unconstitutional. The limit of our authority in this respect is to disregard, as in violation of the Constitution, any act or part of an act which stands in the way of the legal rights of a suitor before us; but a suitor who calls upon a court of chancery to arrest the performance of a duty imposed by the legislature upon a public officer, must show conclusively, not only that the act about to be performed is unconstitutional, but also that it will inflict a direct injury upon him."

See also Minneapolis Brewing Co. v. McGillivray, supra; and in the extreme case of Ex parte Young, 209 U. S. 123, 148, 28 Sup. Ct. 441, 449, 52 L. ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann. Cas. 764, it was said, in discussing the propriety of granting the relief sought:

"The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the legislature is complete in any event."

If this action may be maintained, it seems clear that, in all cases of attempted police regulations, whenever one receives merely incidental injury in property rights therefrom, resort to equity may be

had to adjudicate the constitutionality of the legislation, and meanwhile the criminal arm of the state may be tied, thus rendering such measures at least temporarily inoperative. This view opens a wide door when we consider the extent of laws regulating intoxicating liquors, shipments of live stock, game, and numerous others already on the statute books and certain to follow to meet future exigencies, many of which have and will necessarily cause pecuniary loss to persons not included within the penal provisions thereof. Nor is this all; for on the argument plaintiff confidently assumed the position that if it was not entitled to relief against the attorney general, yet defendant carriers, not having appealed from the order granting a temporary injunction, must obey it, which, if followed to logical conclusion, would seem to result either in annulment of the statute until plaintiff and the carriers see fit to bring the action on for trial, or in the paradox of compelling the law officers of the state, in performance of duties imposed upon them by law, to seek convictions of the carriers in the criminal courts for failing to do the identical acts prohibited by the civil branch of the same courts. The opportunity for collusion thus afforded, if such be the law, between those interested in avoiding, either temporarily or permanently, the effect of regulative legislation, would be tempting; and such statutes, no matter how necessary, would really go into effect, not according to their terms, but after test of constitutionality and judicial approval in actions wherein all parties are desirous of their defeat. Applied to railroad companies, the only prerequisites needed to bring about this result, would be legislation deemed by them undesirable, and a willing plaintiff claiming indirect injury therefrom.

We are satisfied the right to test the constitutionality of penal statutes has not been unduly limited by our decisions, and an extension of the doctrine would be a long step on the road to "government by injunction." We regard the limitation requiring direct, as distinguished from consequential injury, "distinct from the proceedings to punish personally for the commission of the crime," necessary in order to preserve the established boundaries dividing legislative and judicial authority, as well as civil and criminal jurisdiction. Moreover, substantially borrowing Mr. Justice O'Brien's observations in

Cobb v. French, supra, 434, and applying them to the present case, if the court is now, at plaintiff's instance, to entertain a suit in equity to prevent prosecution of the carriers, why should it not permit a similar action to restrain them from violating the statute, or, under like circumstances, the commission of any other offense, thus destroying the right of jury trial?

We hold the complaint alleges no direct injury or trespass to or against plaintiff's property rights, that the action is essentially one to restrain criminal prosecutions, and no cause of action is averred.

Order reversed.