## WILLIAM F. SCHULTE AND OTHERS v. C. P. FITCH AND OTHERS.[1]

February 27, 1925.

No. 24,578.

**Statutes invalid only when clearly unconstitutional.**

1. Statutes are presumed to be valid and will be declared invalid only when they clearly transgress some inhibition of the Constitution.

**Appropriation act of 1923 for testing cattle for tuberculosis not unconstitutional.**

2. Chapter 269, L. 1923, adopting the "area plan" for suppressing tuberculosis among cattle, does not violate the constitutional provision forbidding taxation for private purposes; nor the provision requiring taxation to be uniform on the same class of subjects; nor the provision forbidding the state to engage in internal improvements; nor the provision forbidding special legislation; nor the provisions securing equal protection of the laws.

**Suppression of tuberculosis among domestic animals a public purpose.**

3. Statutes to promote and protect the public health by suppressing tuberculosis among domestic animals are for a public purpose.

**Such laws liberally construed.**

4. Laws for promoting and protecting the public health are liberally construed to accomplish the intended purpose.

**Area plan adopted.**

5. By this statute the state adopted the "area plan" for controlling and suppressing tuberculosis among cattle, designated counties as such areas, and made them one of its agencies for carrying the plan into effect.

**Act does not regulate affairs of counties.**

6. The statute deals with a matter of state concern. It does not regulate the affairs of counties as such, and does not offend the provision that laws regulating such affairs "shall be uniform in their operation throughout the state."

[1] Reported in 202 N. W. 719.

**Act does not violate equality rules.**

7. It is general in form and in operation, and does not violate the equality rules.

**Legislative discretion not exceeded.**

8. The legislature was within its discretion in providing that the "area plan" should be put into operation in a county only when the board of county commissioners, on petition of a majority of the cattle owners, made the required appropriation to aid in defraying the necessary expense.

**Violation of quarantine regulations.**

9. The statute is supplemental to prior laws, and as the quarantine regulations adopted are authorized by prior laws, violations of them are within the penal provisions of such laws.

*Headnote 1. See Constitutional Law, 12 C. J. p. 791, § 221; p. 795, § 222.

Headnote 2. See Constitutional Law, 12 C. J. p. 1150, § 880 (1926 Anno); States, 36 Cyc. p. 886; Statutes, 36 Cyc. p. 1008; Taxation, 37 Cyc. pp. 722, 746.

Headnote 3. See Statutes, 36 Cyc. p. 987.

Headnote 4. See Health, 29 C. J. p. 243, § 6.

Headnote 5. See Statutes, 36 Cyc. p. 1002.

Headnote 6. See Statutes, 36 Cyc. p. 993.

Headnote 7. See Statutes, 36 Cyc. p. 988.

Headnote 8. See Constitutional Law, 12 C. J. p. 864, § 365.

Headnote 9. See Animals, 3 C. J. p. 60, § 182.

Two actions begun in the district court for Meeker county where an order was granted by Baker, J., requiring defendants to show cause why a temporary injunction should not issue, and then transferred to Ramsey county where an order was made by Hanft, J., requiring plaintiffs to show cause why the application of Minnesota Co-operative Creameries Association, Inc., to intervene in the cases, should not be granted. The orders to show cause were heard by John B. Sanborn, J., who discharged them and the application of the Creameries Association. From the order discharging the order to show cause and temporary restraining order issued by Judge Baker, plaintiffs appealed. Affirmed.

*Manahan, Sullivan & Hoogesteger*, for appellants.

*Clifford L. Hilton*, Attorney General, *Victor E. Anderson*, Assistant Attorney General, and *Raymond H. Dart*, County Attorney, for respondent.

*Mitchell, Doherty, Rumble, Bunn & Butler*, on behalf of the Creameries Association, filed a brief as amici curiae.

TAYLOR, C.

Chapter 269, p. 350, L. 1923, provides, in section 1:

"The boards of county commissioners of the several counties of this state are hereby authorized upon petition of a majority of the persons owning cattle in the county * * * to appropriate * * * a sum of money not exceeding twenty-five cents per head of cattle for each tuberculin test that may be administered, until the percentage of tuberculous cattle within the county is reduced to meet the requirements of a 'modified accredited area' as defined and approved by the United States Department of Agriculture and the State Live Stock Sanitary Board of Minnesota, for the purpose of aiding in the testing of cattle in the county for tuberculosis and of carrying out sanitary and quarantine regulations."

Other sections of the act provide that the state live stock sanitary board shall enter into an agreement with any county board, making such appropriation, to test all cattle in the county for tuberculosis, provided funds are available for the payment of indemnities as provided by law, and provided also that qualified veterinarians are available to make the tests; that for the purpose of receiving Federal aid the Federal bureau of animal industry may be a party to such agreement; that the owners of cattle within such county shall submit them for tests and physical examinations and shall cause all infected animals to be slaughtered; and that the state live stock sanitary board shall make and enforce all necessary quarantine rules and regulations within the area covered by the agreement.

In May, 1923, the board of county commissioners of Meeker county, under and pursuant to this statute, entered into an agreement with the state live stock sanitary board and the Federal bureau of

animal industry by which the state board, with the assistance of the Federal bureau, was to test all cattle in the county for tuberculosis, to cause all infected cattle to be slaughtered, and to put into effect and enforce the rules and regulations necessary to establish the county as a "modified accredited tuberculosis-free area," as defined by the Federal department of agriculture.

The live stock sanitary board proceeded to make the tests as provided in the regulations. The first test disclosed 553 infected herds. The board proceeded to carry out the provision for eradicating the disease, and a later test showed that the number of infected herds had been reduced from 553 to 60. To accomplish the purpose more effectively the board adopted additional quarantine regulations. Edward Branson and five other cattle owners, engaged in the dairy business in the county, then brought an action to enjoin the county commissioners, the live stock sanitary board, and the board of health from carrying out or enforcing the provisions of the agreement on the ground that the statute is unconstitutional, and that the agreement entered into and the regulations adopted by the board are unauthorized and void. William F. Schutte and seven other taxpayers of the county brought a similar action on the same grounds. By consent the two actions were consolidated. The plaintiffs applied for a temporary injunction restraining the defendants from carrying out the provisions of the agreement or enforcing the quarantine regulations during the pendency of the action. The application was denied and the plaintiffs appealed.

The two assignments of error challenge the constitutionality of chapter 269, p. 350, L. 1923; and the authority of the state live stock sanitary board to institute criminal prosecutions against cattle owners who refuse to permit their cattle to be tested.

In support of their contention that the statute infringes the provisions of the Constitution, plaintiffs assert that it imposes taxation for a private purpose; that it makes the state a party to a work of internal improvement; that it provides for a tax not uniform on the same class of subjects; that it denies equal protection of the laws, and that it is special or class legislation.

That tuberculosis is a dangerous, contagious or infectious disease which attacks both human beings and domestic animals; that it is prevalent throughout the state among both human beings and domestic animals; and that it is communicated to human beings, especially to children, by milk and other food products from infected animals, stand undisputed. The object of the statute is to promote and preserve the public health by providing a means for the control and suppression of this disease among cattle. That it is for a public purpose is beyond question.

"That the preservation of the public health is one of the duties devolving upon the state, as a sovereign power cannot be successfully controverted. In fact, among all of the objects sought to be secured by governmental laws, none is more important than the preservation of the public health; and an imperative obligation rests upon the state, through its proper instrumentalities or agencies, to take all necessary steps to promote this object. This duty finds ample support in the police power which is inherent in the state and which the latter cannot surrender. It is as much for the interest of the State that the public health should be preserved as that life should be made secure." 12 R. C. L. 1264.

"It is a well recognized principle that the protection of the public health is one of the first duties of government. Therefore, whatever rationally tends to promote and preserve the public health is an appropriate subject of legislation." 29 C. J. 242.

As the statute is clearly a measure for the protection of the public against disease, it is not within the constitutional inhibition against taxation for private purposes, nor within the inhibition against the state engaging in work of internal improvement. That dairy products certified as coming from a "modified accredited area," as defined in the Federal regulations, bring higher prices in the markets than such products from other areas, a fact shown by the record, does not establish that the act is for a private purpose, as claimed by plaintiffs, but that the public recognizes that such areas are comparatively free from infection and that food products therefrom may be consumed with little or no danger of contracting the disease.

Plaintiffs apparently base their contention that the act provides for a tax not uniform on the same class of subjects on the fact that the amount to be appropriated by a county for the purpose of making the tests is to be determined by the total number of cattle in the county instead of by the number infected. They urge that a county having a large number of cattle with only a few infected is required to raise a greater sum than a county having a smaller number but with a larger number infected. We see little force in this contention, for all cattle in the county must be tested and the number infected is not known at the time the appropriation is made.

The contention that the act is special or class legislation and therefore violates the equality rules raises the important question in the case.

Laws for controlling and suppressing disease, and for promoting the public health are always given a broad and liberal construction that they may accomplish the purpose intended in enacting them. Schmidt v. County of Stearns, 34 Minn. 112, 24 N. W. 358; State v. Zimmerman, 86 Minn. 353, 90 N. W. 783, 58 L. R. A. 78, 91 Am. St. 351; Town of Iosco v. Board of County Commrs. 93 Minn. 134, 100 N. W. 734; 29 C. J. 243.

The state may make municipalities, counties or other territorial subdivisions its agencies in performing its governmental functions. To accomplish its purpose, it may employ any agency it pleases. State v. Robinson, 101 Minn. 277, 112 N. W. 269, 20 L. R. A. (N. S.) 1127; Associated Schools v. School Dist. No. 83, 122 Minn. 254, 142 N. W. 325, 47 L. R. A. (N. S.) 200; State v. George, 123 Minn. 59, 142 N. W. 945; Berman v. Minnesota S. A. Society, 93 Minn. 125, 100 N. W. 732; State v. Boehm, 92 Minn. 374, 100 N. W. 95; Kramer v. County of Renville, 144 Minn. 195, 175 N. W. 101; State Board of Health v. Greenville, 86 Oh. St. 1, 98 N. E. 1019, Ann. Cas. 1913D, 52.

By this statute the state made the counties as well as the live stock sanitary board a part of the governmental machinery for protecting and preserving the public health. The powers to be exercised and the duties to be performed by a county under it are to be

exercised and performed merely as a governmental agency. Davock v. Moore, 105 Mich. 120, 63 N. W. 424, 28 L. R. A. 783; Blue v. Beach, 155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. 195; Henderson County Board of Health v. Ward, 107 Ky. 477, 54 S. W. 725; Forbes v. Board of Health, 28 Fla. 26, 9 South. 862, 13 L. R. A. 549.

The power to enact laws is vested in the legislature and is without limit except as restricted by the Constitution. A statute enacted by the legislature is presumed to be valid, and can be declared invalid only when the court can point out some constitutional provision which it transgresses. Plaintiffs contend that this statute violates the provisions of sections 33 and 34 of article 4 of the Constitution which declare that "the legislature shall pass no local or special law regulating the affairs of · * * * any county, city, village, township, ward or school district"; and that "all such laws shall be uniform in their operation throughout the state."

In support of this contention they cite State v. Copeland, 66 Minn. 315, 69 N. W. 27, 34 L. R. A. 777, 61 Am. St. 410, and Lodoen v. City of Warren, 146 Minn. 181, 178 N. W. 741, in which it was held that a statute regulating the affairs of cities, but which became operative in only those cities which elected to adopt it, violated the requirement that such laws "shall be uniform in their operation throughout the state." The provisions there construed apply only to laws *"regulating the affairs"* of the *municipalities specified.* They do not apply to the statute here in question. This statute does not regulate or affect any matters pertaining to counties as such. It does not apply to or affect any of the corporate, municipal or local powers or duties exercised or performed by counties in managing and conducting the county business. The distinction between laws in respect to the local and municipal affairs of municipalities and laws in respect to matters of state concern, in which the state sees fit to act through the agency of such municipalities, has been frequently pointed out. State v. Sullivan, 67 Minn. 379, 69 N. W. 1094; State v. Dreger, 97 Minn. 221, 106 N. W. 904; Dahlsten v. Anderson, 99 Minn. 340, 109 N. W. 697; State v. Fleming, 112 Minn. 136, 127 N. W. 473; State v. Village of Cloquet, 52 Minn. 9, 53 N. W. 1016.

To encourage action to control and eradicate tuberculosis among domestic animals, the Federal department has approved what is termed the "area plan"; and offers aid in carrying out this plan; and will certify as a "modified accredited tuberculosis-free area" any given area in which the disease has been brought under control and suppressed in accordance with its requirements. To cooperate with the Federal department, the state adopted this plan as one of its measures to conserve and protect the public health. As a matter of convenience, it designated counties as the "areas" to which the plan should apply. It could, with equal propriety, have established such areas regardless of county lines or other municipal boundaries. It was not dealing with the affairs of counties, but with a matter of state concern to which the restriction upon legislation relating to county affairs does not apply.

The act is general both in form and in operation. Any county in the state can obtain the benefit of it in the same manner and on the same conditions as any other county. It does not violate the equality rules.

Objection is made because the act is permissive, not mandatory, and does not go into operation in any county until the county board, on petition of a majority of the cattle owners of that area, make an appropriation to aid in defraying the expense of making the tests. A law may permit as well as command. Here the state offers substantial financial aid and the services of the state live stock sanitary board with its corps of veterinarians in suppressing the disease in any county which will make the required appropriation.. It could have made compliance with the act compulsory. Instead it permits each county to determine for itself, through its board of county commissioners, whether the "area plan" for eradicating the disease shall be put into effect and enforced within such county. The legislature deemed it wise to invite and secure voluntary local co-operation before applying that plan to a given area, and we cannot say that it exceeded the prerogative of the law-making power in doing so. The claim that the procedure adopted offends the Constitution is sufficiently answered, we think, in prior decisions. State v. City of Nashwauk, 151 Minn. 534, 186 N. W. 694, 189 N. W. 592; Wil-

liams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; State v. Sullivan, 67 Minn. 379, 69 N. W. 1094; State v. Andrew Brothers, 144 Minn. 337, 175 N. W. 685; State v. Rogers, 97 Minn. 322, 106 N. W. 345; Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L. R. A. (N. S.) 621, 9 Ann. Cas. 270; State v. Fairmont Creamery Co. supra, page 146, 202 N. W. 714. See also State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. 571; State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L. R. A. (N. S.) 327.

That the petition initiating the proceedings in a county is to be made by cattle owners instead of by legal voters is not a delegation of legislative power to the cattle owners. Although the board of county commissioners, the legislative body of the county, is not authorized to act until the required petition has been presented, the final decision rests with that board. It is within the province of the legislature to require compliance with such conditions as it deems proper before the powers which it confers may be exercised. It has frequently required a petition by other than legal voters. The petition for a county road must be made by freeholders, G. S. 1913, § 2520; and that for a drainage project by landowners, G. S. 1913, § 5525. See State v. City of Nashwauk, 151 Minn. 534, 186 N. W. 694, 189 N. W. 592; Banse v. Town of Clark, 69 Minn. 53, 71 N. W. 819; Bowman v. Virginia State Entomologist, 12 A. L. R. 1121; Woodward v. Fruitvale Sanitary Dist. 99 Cal. 554, 34 Pac. 239.

Section 6 of the statute provides:

"Definite quarantine rules and regulations shall be adopted and enforced by the State Live Stock Sanitary Board within the area covered by the co-operative agreement."

But this statute contains no express provision declaring a violation of such rules and regulations to be a criminal offense. Because of this omission, plaintiffs claim that they cannot be prosecuted criminally for refusing to comply with such rules and regulations. They allege that defendants have instituted criminal proceedings against plaintiff Branson and threaten to institute such proceedings against others of the plaintiffs, and ask that defendants be enjoined

from instituting or prosecuting such proceedings. Even if we were to concede that violating the quarantine rules and regulations is not a penal offense, it is at least doubtful whether the facts stated would justify a court of equity in enjoining a criminal prosecution. Cobb v. French, 111 Minn. 429, 127 N. W. 415; Milton Dairy Co. v. G. N. Ry. Co. 124 Minn. 239, 144 N. W. 764; Sherod v. Aitchison, 71 Ore. 446, 142 Pac. 351, Ann. Cas. 1916C, 1151, and annotation at page 1153.

In enacting this statute, the legislature necessarily had in mind the laws relating to such matters then existing, and clearly intended this as an addition or supplement thereto. Such prior laws are found in sections 4690 to 4722, inclusive, of the General Statutes of 1913 and the several amendments thereto. They create a state live stock sanitary board and define its powers and duties, provide measures for controlling, eradicating and preventing contagious and infectious diseases among domestic animals, direct the adoption and enforcement of appropriate rules and regulations to prevent the introduction or spread of such diseases, and provide for the slaughter of infected animals, after notice to the owner, and for payment of an indemnity to the owner of the animals so slaughtered. They also declare that every person violating any of the provisions of such laws, or any rule or regulation adopted by the live stock sanitary board thereunder, shall be guilty of a misdemeanor. Plaintiffs insist that by the terms of these penal provisions, the only quarantine regulations to which they apply are those adopted under and pursuant to the law in which they were enacted, and that the regulations here in question are not authorized by that law. The act of 1923 clearly intends that the prior laws shall apply to proceedings thereunder, for it provides in section 2 that the sanitary board shall cause the cattle of a county adopting the plan to be tested "provided funds are available for payment of indemnities, as required by law."

The only provision for paying indemnities for cattle slaughtered and for providing funds therefor is found in the prior laws. Whether the act of 1923 goes far enough to make the penal provisions of the prior laws apply to proceedings under it we need not determine,

for the rules and regulations adopted by the live stock sanitary board, found in the record, are clearly within the power conferred upon that board by the prior laws and consequently are within the penal provisions of those laws. The order of the learned trial court is affirmed.