## MINNESOTA POLLUTION CONTROL AGENCY v. ROLLAND HATFIELD.

200 N. W. 2d 572.

August 11, 1972—No. 43738.

*Trench, Ericson, MacGregor, Lohmann & O'Brien* and *Dudley C. Ericson,* for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Geoffrey P. Jarpe,* Special Assistant Attorney General, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment upholding the constitutional validity of Ex. Sess. L. 1971, c. 20.

There is no material issue of fact involved. During the 1971 special legislative session, c. 20 was enacted pursuant to a legislative determination that "state financial assistance for the construction of water pollution prevention and abatement facilities for municipal disposal systems is a public purpose and a proper function of state government, in that the state is trustee of the waters of the state and such financial assistance is necessary to protect the purity of state waters, and to protect the public health of the citizens of the state, which is endangered whenever pollution enters state waters at one point and flows to other points in the state." Ex. Sess. L. 1971, c. 20, § 1, subd. 1.

The legislature authorized a water pollution control fund to which $9,750,000 was appropriated from the general fund and bonds not to exceed $25 million were to be issued by the state auditor upon request of the Minnesota Pollution Control Agency, which was to administer the fund, making grants and loans to municipalities for the purpose set out in the legislative act.

The Minnesota Pollution Control Agency requested the state auditor to issue $1 million of the bonds authorized by c. 20. He refused to do so, stating that he was in doubt as to the constitutionality of the act on the ground that the state might be investing in works of internal improvement, which is proscribed by Minn. Const. art. 9, § 5, and on the additional grounds that the legislature had improperly delegated legislative authority to the Pollution Control Agency.

The evidence presented to the trial court consisted of six affidavits from experts in the areas of water, water pollution, and water-related activities, together with an affidavit of the state auditor and his attorney specially appointed for that purpose, questioning the constitutionality of the act. The six affidavits submitted in support of the constitutionality of the act stated

that water pollution was a serious problem in Minnesota; that untreated sewage was a health hazard when discharged into surface waters or directly into the ground; that central sewage collection and treatment systems help alleviate the problem; that good sewage facilities were conducive to attracting industry and tourists and in the preservation of fish and other wildlife.

The trial court upheld the constitutionality of the act and this appeal followed. The questions are: (1) Do the provisions of Ex. Sess. L. 1971, c. 20, violate Minn. Const. art. 9, § 5, prohibiting the investment by the state of public money in internal improvements? (2) Do the provisions of the act disbursing funds from general obligation bonds sufficiently state the purpose for which the money is to be spent, as required by Minn. Const. art. 9, § 6, subds. 2 and 4? (3) Do provisions of the act provide for an unlawful delegation of legislative authority in contravention of Minn. Const. art. 3?

■ At the outset, we note that the declaration of a public purpose by the legislature in the act involved is not conclusive. In Visina v. Freeman, 252 Minn. 177, 184, 89 N. W. 2d 635, 643 (1958), we said in that regard:

"In determining whether an act of the state constitutes a performance of a governmental function or a public purpose which will justify the expenditure of public money, a legislative declaration of public purpose is not always controlling. The determination of what is and what is not a public purpose, or the performance of a governmental function, initially is for the legislature, but in the final analysis it must rest with the courts."

Minn. Const. art. 9, § 5, provides in pertinent part:

"The state shall never be a party in carrying on works of internal improvements * * *."

In interpreting this constitutional provision, we said, in Rippe v. Becker, 56 Minn. 100, 117, 57 N. W. 331, 335 (1894), involving the appropriation of funds by the legislature for the building of a grain elevator in Duluth:

"* * * [T]he courts have never supposed that it [art. 9, § 5] was to be restricted to channels of travel and commerce, but, on the contrary, have always assumed that it included 'any kind of work that is deemed important enough for the state to construct,' except, of course, as indicated in *Leavenworth Co. v. Miller, supra,* those which are used exclusively by and for the state, as a sovereign, in the performance of its governmental functions, such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like; for education, the prevention of crime, charity, and the *preservation of public health* are all recognized functions of state government." (Italics supplied.)

This definition of internal improvements has been cited approvingly by this court and followed in other courts. In Visina v. Freeman, *supra,* which involved the expenditure of money for construction of port facilities by the port authority in Duluth, we said (252 Minn. 193, 89 N. W. 2d 648):

"While the plain meaning of language used in our fundamental law may not be tampered with to accomplish a desired result no matter how archaic it has become by virtue of social and economic changes which have occurred since its adoption, neither should the proper interpretation of constitutional provisions ignore such changes. In determining whether an act of the legislature contravenes a constitutional provision we should endeavor to interpret the provision in the light of existing conditions, particularly when those conditions could not have been foreseen at the time the constitution was adopted. * * * The limitation on spending public money for internal improvements obviously was not intended to circumscribe such activity [seaway port development]. * * * While we held that the term 'internal improvements' includes any public improvement in Rippe v. Becker, 56 Minn. 100, 57 N. W. 331, 22 L. R. A. 857, it must be kept in mind that, in discussing the term, we did not there have in mind any such thing as the development of a seaport. It seems to us

that such improvement could not have been within the contemplated meaning of this constitutional proscription, nor would it be proper to so construe the constitution as to include it within the meaning of 'internal improvements.' "

In State ex rel. La Follette v. Reuter, 33 Wis. 2d 384, 403, 147 N. W. 2d 304, 315 (1967), which cites and follows our cases of Rippe and Visina, the Wisconsin court, in a case almost identical on this issue to the one now before us, said:

"We conclude that matters pertaining to the abatement of water pollution are governmental functions of the state of Wisconsin and that water pollution prevention and abatement facilities are not works of internal improvement within the prohibition of sec. 10, art. VIII, Const."

Similarly, in Oakland Drain Commr. v. Royal Oak, 306 Mich. 124, 10 N. W. 2d 435 (1943), the Michigan court held that the establishment and operation of a sewage disposal system is not a work of internal improvement prohibited by the Michigan constitution.

We have long recognized that proper disposal of sewage involves the preservation of the public health. City of Ada v. Melberg, 135 Minn. 130, 160 N. W. 257 (1916). Preservation of the public health and the suppression of disease involve a governmental function. Indeed, it is probably one of the most important functions of government. In this case it is undisputed that the discharge of untreated or insufficiently treated sewage into our lakes and streams constitutes a menace to the public health and endangers the public waters not only for human consumption but for recreational purposes and the propagation of fish. In Lipinski v. Gould, 173 Minn. 559, 218 N. W. 123, 730 (1928), we held that activities of our state game and fish commissioner in conducting state fishing operations was not a violation of Minn. Const. art. 9, § 5. We there said (173 Minn. 561, 218 N. W. 124):

" 'Works of internal improvements' within the meaning of the constitution do not include 'works' constructed for and used by

the state itself in the performance of its governmental functions. * * * It does not preclude the state from furnishing funds for and carrying into effect measures intended to promote the public safety, preserve the public health or suppress disease."

Similarly, in Schulte v. Fitch, 162 Minn. 184, 202 N. W. 719 (1925), we held that assistance by the state to counties in the control of tuberculous cattle was not violative of the constitutional proscription against engaging in works of internal improvement. We there said (162 Minn. 188, 202 N. W. 721):

"* * * The object of the statute is to promote and preserve the public health by providing a means for the control and suppression of this disease among cattle. That it is for a public purpose is beyond question.

* * * * *

"As the statute is clearly a measure for the protection of the public against disease, it is not within the constitutional inhibition against taxation for private purposes, nor within the inhibition against the state engaging in work of internal improvement."

Pollution of our air and waters has now become one of the chief concerns of our citizenry. It must be generally conceded that alleviation of pollution in our waters in order that they may be made safe for human consumption and safe for recreational purposes and the propagation of fish involves the preservation of the public health as well as the public welfare and as such it constitutes a governmental function for which the expenditure of public money does not contravene Minn. Const. art. 9, § 5, prohibiting the expenditure of such funds for internal improvement.

■ Appellant next contends that c. 20 contravenes Minn. Const. art. 9, § 6, subds. 2 and 4, in that it does not "distinctly specify the purpose or purposes" for which bonds are to be issued. The pertinent provision of art. 9, § 6, reads as follows:

"* * * [E]ach law authorizing the issuance of such bonds shall distinctly specify the purpose or purposes thereof and the

maximum amount of the proceeds authorized to be expended for each purpose."

While we have not been asked to construe the word "distinctly" as used in this constitutional provision, we think its meaning is clear and that the purpose for which the bonds are to be issued under c. 20 is stated in the following language (§ 2, subd. 1):

"For the purpose of providing money to be appropriated or loaned to municipalities from the Minnesota state water pollution control fund for the acquisition and betterment of public land, buildings, and improvements of a capital nature needed for the prevention, control, and abatement of water pollution in accordance with the provisions of section 1, when such appropriations or loans are authorized by law and funds therefor are requested by the agency * * *."

While the facts are not similar, we have held that the words "acquisition and betterment" sufficiently describe the purpose of a school bond. Buhl v. Joint Independent Consolidated School Dist. No. 11, 249 Minn. 480, 82 N. W. 2d 836 (1957); see, also, Green v. Independent Consolidated School Dist. No. 1, 252 Minn. 36, 89 N. W. 2d 12 (1958). We think the statute here sufficiently describes the purpose for which the funds are to be used so that it is not in violation of the constitution.

■ Finally, appellant claims that c. 20 unlawfully delegates legislative authority to the Pollution Control Agency in contravention of Minn. Const. art. 3, which reads:

"The powers of government shall be divided into three distinct departments—legislative, executive, and judicial; and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except in the instances expressly provided in this constitution."

This objection has been adequately answered in former deci-

sions of this court. In Visina v. Freeman, *supra,* we said (252 Minn. 199, 89 N. W. 2d 653):

"It is well settled that, while the legislature may not delegate legislative power, it may delegate legislative functions which are merely administrative or executive in carrying out the mandate of the legislature as provided by law. The legislature has a large discretion in determining by what agency its laws are to be administered. * * *

\*   \*   \*   \*   \*

"In State ex rel. Interstate, etc. v. Metropolitan Airports Comm. 223 Minn. 175, 190, 25 N. W. (2d) 718, 728, the difference in the delegation of legislative power and legislative function was said to be that 'the one involves the power to make law; the other requires action prescribed by law.'"

See, also, Anderson v. Commissioner of Highways, 267 Minn. 308, 126 N. W. 2d 778 (1964); Welsand v. Railroad & Warehouse Comm. 251 Minn. 504, 88 N. W. 2d 834 (1958).

The statute we are concerned with in this case is quite involved. It sets out the manner in which the grants and loans are to be made, but the actual appropriation is made by the legislature. We think the act comes well within the statements of this court in differentiating between the enactment of a law and the administration of it.

Appellant also raises some question as to whether or not a regulation, WPC 34, was properly promulgated by the agency. This has no bearing on the constitutionality of the act, and it would serve no good purpose to discuss the validity of this regulation.

We find no constitutional barrier to the act involved and the trial court, is accordingly, affirmed.