E. T. BARRON v. CITY OF MINNEAPOLIS AND OTHERS.[1]

June 12, 1942.

No. 33,245.

[1]Reported in 4 N. W. (2d) 622.

*R. S. Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for appellants.

*S. Paul Skahen* and *Gleason, Ward & Orff,* for respondent.

JULIUS J. OLSON, JUSTICE.

Action under the declaratory judgments act (Mason St. 1940 Supp. § 9455-1, *et seq.*) for a judicial determination of the validity of a Minneapolis ordinance. So far as here important, the complaint alleges that plaintiff has been engaged in the business of selling candy, gum, peanuts, and unbottled soft drinks and edibles of different kinds by means of coin-vending machines, and that he is also engaged in "leasing, selling and distributing" such machines. He had been licensed under an ordinance approved March 29, 1932, referred to in the record as exhibit A, which he claims "is now and has been at all times hereinafter mentioned in full force and effect." That ordinance is not under attack. On March 3, 1941, a new ordinance was enacted, referred to as exhibit B. Under its provisions, a vending machine is defined as "a machine which for a fee deposited therein returns candy, gum, peanuts, unbottled soft drinks, or edibles of any kind or nature. A unit shall mean each single vending machine." The "owner or vendor" of each such machine, before selling, renting, leasing, or otherwise disposing of it, is required to obtain a license so to do. The annual license fee is "$5.00 for each five-cent or over vending unit, and $1.00 for each one-cent vending unit." No one may receive a license for such a machine "unless he has in force a food license" at the place where the machine is in operation. Each machine so licensed is to be identified by "suitable identification marks and numbers" to be "permanently affixed" to it. The licensee at the time of making his application for license, and semiannually thereafter, is to file with the bureau of licenses a list of the places in which his machines are located. Any violation of the ordinance

is punishable by a fine of not exceeding $100 or imprisonment for a period not exceeding 90 days.

Plaintiff's attack is based on constitutional grounds. He argues a number of these, his assertion being that if the ordinance is valid at all it must rest upon the health or the general welfare provisions of the city charter. The alleged defect to which we shall direct our attention is that which has to do with his claim that the ordinance is in its purpose and effect a revenue measure masquerading under the guise of a fee for the issuance of licenses.

For defendants, it is claimed (1) that since the complaint contains no allegation "that immediate destruction of property is involved" plaintiff has an adequate remedy at law and as such may not proceed under the declaratory act; (2) that since plaintiff has recognized the old ordinance he may not invoke the declaratory act as to this one; and (3) that, in any event, the later act is a valid one although it contains nothing by way of repeal, amendment, or limitation upon the former ordinance. To avoid the threatened risk of summary proceedings to enforce the ordinance, plaintiff asks the court to "assume jurisdiction and determine the validity or invalidity of said new ordinance of 1941." Defendants' general demurrer to the complaint was overruled, and they appeal, the court having certified that the issues presented are important and doubtful.

1. We shall determine first defendants' claim that the declaratory act is unavailable to plaintiff. The statute is broad and comprehensive in its terms, for it provides (Mason St. 1940 Supp. § 9455-1):

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

Section 9455-2 provides:

"Any person * * * whose rights, status or other legal relations are affected by a * * * municipal ordinance * * *

may have determined any question of construction or validity arising under the * * * ordinance * * * and obtain a declaration of rights, status or other legal relations thereunder."

Here, as we have seen, plaintiff is in a dilemma as to which ordinance applies to him and his business. If the ordinance is one for a license and not merely for revenue, then, clearly, it is to his interest and likewise to that of the city to have such issue determined. So it is plainly to be seen that the situation is one that affords a good reason for making use of the act. Defendants' cases on this score, namely, Cobb v. French, 111 Minn. 429, 127 N. W. 415; Basting v. City of Minneapolis, 112 Minn. 306, 127 N. W. 1131, 140 A. S. R. 490; and Milton Dairy Co. v. G. N. Ry. Co. 124 Minn. 239, 144 N. W. 764, 49 L.R.A. (N.S.) 951, were decided before the act was passed and are not of controlling force now. We have had occasion to apply the act in several cases, among them State Farm Mut. Auto Ins. Co. v. Skluzacek, 208 Minn. 443, 446, 294 N. W. 413, 415, involving a liability policy contract. We there said that, while the proceedings under the act were new, in its principles "it is well grounded in the law" and, over a long period of time, has become "another established remedy." The tendency so to apply it has the general support of the courts. Thus in Bakelite Corp. v. Lubri-Zol Development Corp. (D. C.) 34 F. Supp. 142, 143, 144:

"A declaratory judgment suit is not a suit in equity and differs from equity suits in important respects. Absence of an adequate remedy at law is requisite to a suit in equity. That rule is not applicable to suits for declaratory judgments. * * * 'The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.' "

Cf. Dunleer Co. v. Minter Homes Corp. (D. C.) 33 F. Supp. 242, 244[4]. In Sunshine Min. Co. v. Carver, 34 F. Supp. 274, 280[10], in a situation similar to that presented here, the court said:

"Such a transfer of interpretation of statute, from criminal to a civil Court, should be approved where the plaintiff under this

new additional remedy, the Declaratory Judgment Act, shows a substantial controversy existing. It is a too narrow view of the judicial functions and under the Declaratory Judgment Act to assert that the only method of trying the validity of the business practice here is to wait until the prosecution occurs."

Numerous cases are cited in 3 Dunnell, Supp. § 4988a, and Mason St. 1940 Supp. § 9455-1. These being easily available, citation of them is not deemed necessary. We think the act applicable to the facts here presented.

2. We must constantly bear in mind that "the distinction between the power to license as a police regulation and the same power when conferred for revenue purposes is of the utmost importance." If this is a police regulation only, a narrower construction must be adopted than in the case of a grant by charter to the council of discretionary authority with a view to public revenue. 38 Am. Jur., Municipal Corporations, § 321, p. 14.

We have recited the substance of the 1941 ordinance. We find nothing in it about policing the licensee's business and regulating the orderly conduct thereof, nor anything in the way of requiring inspection of articles to be sold. Furthermore, on what basis can it be said that the issuing of a license for a one-cent machine costs any less in the way of services to be performed by the public officers than the five-dollar charge for a five-cent machine? We think it obviously appears that there is no such distinction. Quite the contrary. What the city council sought to accomplish, and did accomplish, was the enactment of a revenue measure, since the service rendered in the issuance of a license is, as to each type of machine, exactly the same. If this were a parking ordinance providing different rates for identical parking spaces, as, for example, one rate for a cheap car and another for a costly one, could the ordinance be sustained on the basis of a license? We are of the view that in this case, as in City of St. Paul v. Traeger, 25 Minn. 248, 251, 252, 33 Am. R. 462, "it is quite obvious that the amount of the license fee was fixed with reference to revenue purposes, which it was the main object of the ordinance to promote by

means of a tax imposed upon the particular employment or pursuit, through the exercise of its power over the subject of granting licenses." And here, as there, such ordinance cannot be sustained.

We have held in many cases that where a municipality is authorized to regulate a subject and to require those who do any act under it to obtain a license, the city may charge the person procuring it a reasonable fee to cover the labor and expense of issuing the license. In such a case, the exaction is not a tax but only and properly a license fee "intended to cover the expense of issuing it, the services of officers, and other expenses directly or indirectly imposed" by the act. See 4 Dunnell, Dig. & Supp. § 6800, and cases under note 10.

Order affirmed.

MR. JUSTICE STONE, absent because of illness, took no part in the consideration or decision of this case.

[1]Reported in 4 N. W. (2d) 625.