RICE STREET VFW, POST # 3877, Respondent,

v.

CITY OF ST. PAUL, Appellant.

No. C1–89–1685.

Court of Appeals of Minnesota.

March 13, 1990.

John E. Daubney, St. Paul, for respondent.

Edward P. Starr, St. Paul City Atty., Philip B. Byrne, Asst. St. Paul City Atty., St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

The City of St. Paul appeals the trial court's grant of summary judgment for respondent Rice Street VFW, Post No. 3877, in a declaratory judgment action questioning the validity of a St. Paul ordinance. That ordinance required organizations conducting charitable gambling to contribute part of net profits to a fund operated by the city, for distribution to youth organizations in St. Paul. The trial court held the ordinance violated the statutory ban on local taxation of charitable gambling, and declared that the city was estopped from applying the ordinance to the VFW. Accordingly, the trial court granted summary judgment for the VFW.

We affirm the trial court's declaration that the VFW is not liable for amounts it has previously spent lawfully. We reverse the trial court's declaration that the ordinance is invalid, and that the city is estopped from applying the ordinance to the VFW.

## FACTS

The facts of this case are not in dispute. Plaintiff VFW Post No. 3877 has been licensed by the state to conduct charitable gambling since 1985. The VFW has had a St. Paul license to conduct charitable gambling since July of 1986.

A St. Paul ordinance effective August 26, 1986, required organizations conducting charitable gambling to pay 20 percent of the net profits from selling pull-tabs or tipboards to a fund created by the city. The fund was administered by the city for the benefit of youth organizations in St. Paul. The city council was to approve grants to organizations which met the criteria in the ordinances.

On June 1, 1987, an amendment to the charitable gambling statutes became effective, prohibiting cities from requiring that

organizations contribute over 10 percent of net profits to specific purposes. The city apparently adjusted its enforcement accordingly, and later amended its ordinance effective April 26, 1988, to reflect the 10 percent cap.

On March 4, 1988, the city sent a letter to the VFW demanding 20 percent of net profits from charitable gambling through July of 1987, and 10 percent of net profits from August to the date of the letter. A VFW official stated in an affidavit that the VFW had been unaware of any contribution requirement and that the city had not notified it of any deficiency before sending the March 4 letter. The letter threatened license revocation for failure to comply. On July 13, 1988, the city sent another letter to the VFW, demanding the payment of $32,389.50 for the period from August of 1986 to May of 1988.

On August 11, 1988, the VFW commenced this action, requesting a declaratory judgment holding the 20 percent and 10 percent contribution requirements void and unenforceable. The trial court granted summary judgment and held the following St. Paul ordinance invalid:

> Sec. 404.10. Pull–Tabs, tipboards permitted.
>
> Private clubs which are federally chartered as either fraternal or veterans' organizations may conduct lawful charitable gambling on the licensed premises, subject to the following conditions:
>
> \* \* \* \* \* \*
>
> (17) Shall pay to the city-wide organization designated by the city council twenty (20) percent of the net profits from selling pull-tabs or tipboards to be distributed to other youth athletic organizations to be expended for such lawful purposes as specified in Minnesota Statutes Chapter 349.

St. Paul, Minn., Legislative Code § 404.10(17) (1987) (Ord. No. 17374, § 1) (effective August 26, 1986). The trial court also invalidated the amended version of the ordinance.[1] The amendment lowered the required contribution to 10 percent of net profits. Further, the trial court enjoined:

> any attempt by the City of St. Paul to require the Rice Street VFW, Post # 3877, to pay to the City of St. Paul or any of its agencies, either 20% or 10% of their net profits from the selling of pull-tabs or tip boards at any time after the adoption of Chapter 404 of the St. Paul Legislative Code in 1986.

The trial court thus granted relief from past due and future payments.

The city appeals, arguing the ordinance is authorized by statute. The VFW argues the city has no authority to require the 10 percent or 20 percent contributions and that the ordinances are void on their face.

## ISSUES

I. Did the city's ordinance requiring contributions violate state law?

II. Was the city estopped from collecting unpaid contributions from the VFW?

## ANALYSIS

■ A declaratory relief action may determine the rights of a person affected by an ordinance. Minn.Stat. § 555.02 (1988). Declaratory judgment may determine the validity of ordinances, *see Almquist v. City of Biwabik*, 224 Minn. 503, 505, 28 N.W.2d 744, 745 (1947), and the applicability of an ordinance to an individual. *Barron v. City of Minneapolis*, 212 Minn. 566, 570, 4 N.W.2d 622, 624 (1942). Declaratory judgments and orders are reviewed in the same manner as are other judgments and orders. Minn.Stat. § 555.07 (1988). Thus, the stan-

---

**1.** On March 10, 1988, the St. Paul City Council amended section 404.10(17), lowering the required contribution from 20 percent to 10 percent. *See* St. Paul, Minn., Legislative Code § 404.10(17) (1987) (Ord. No. 17543, § 1) (effective April 26, 1988). Section 404.10(17) was later repealed, but its substance was preserved and moved to section 404.10(6). *See* St. Paul,

Minn., Legislative Code § 404.10(6) (1987) (Ord. No. 17613, §§ 7, 8) (effective January 3, 1989). The language of section 404.10(6) was again amended, directing that 10 percent of the proceeds received be paid to one or more eligible recipients established by the city. *See* St. Paul, Minn., Legislative Code § 404.10(6) (1987) (Ord. No. 17652, § 2) (effective July 10, 1989).

dard for summary judgment applies to this appeal.

Summary judgment is appropriate if the pleadings and affidavits show there is no dispute as to any material fact and that either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. This court's role is to review the record to determine whether any questions of material fact exist and whether the trial court erred in its application of law. *Offerdahl v. University of Minnesota Hospitals & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

## I.

The form of gambling involved in this case, pull-tabs and tipboards, became lawful in 1984. Minn.Stat. § 349.12, subd. 2 (1984). Minnesota law then provided that local authorities could regulate lawful gambling. Minn.Stat. § 349.213 (1984). The provision on local regulation was amended twice after the VFW began conducting charitable gambling. Thus, the validity of the challenged ordinance must be analyzed against a changing statutory backdrop.

### A. July 1986 to June 1, 1987.

The first period begins in July of 1986, when the VFW began conducting charitable gambling. The period ends with the first relevant amendment to Minn.Stat. § 349.213. The issue is whether the St. Paul ordinance was valid during this period.

In July of 1986, the statute on local regulation provided:

349.213. Local authority

Subdivision 1. Local regulation. *A statutory or home rule city or county has the authority to adopt more stringent regulation of any form of lawful gambling within its jurisdiction,* including the prohibition of any form of lawful gambling, and may require a permit for the conduct of gambling exempt from

licensing under section 349.214. The fee for a permit issued under this subdivision may not exceed $100. The authority granted by this subdivision does not include the authority to require a license or permit to conduct gambling by organizations or sales by distributors licensed by the board.

Minn.Stat. § 349.213, subd. 1 (1986) (emphasis added). The subject of taxation of charitable gambling, however, was dealt with elsewhere in chapter 349. By statute, the retail sale of pull-tabs was exempt from all local taxes and license fees. Minn.Stat. § 349.212, subds. 1, 4 (1986). Since its enactment, none of the amendments to Minn.Stat. § 349.212 have lifted this ban on local taxes on charitable gambling. Section 349.212 now provides:

Subd. 4. Pull-tab and tipboard tax. (a) * * * *The retail sale of pull-tabs or tipboards* by the organization is exempt from taxes imposed by chapter 297A if the tax imposed by this subdivision has been paid and *is exempt from all local taxes* and license fees except a fee authorized under section 349.16, subdivision 4.

1986 Minn.Laws ch. 467, § 23 (effective January 1, 1987) (codified as amended at Minn.Stat. § 349.212, subd. 4 (1988)) (emphasis added).[2]

Thus, the laws in effect before June 1, 1987 permitted cities to adopt stricter regulation of charitable gambling. Local taxation of charitable gambling, however, was forbidden. The critical question is therefore whether the city action is taxation or regulation.

■ Case law defines "tax" broadly. Taxation is a burden or charge imposed by legislative power upon persons or property to raise money for public purposes. *Bemis Bro. Bag Co. v. Wallace,* 197 Minn. 216, 221, 266 N.W. 690, 693 (1936). The essential characteristics of a tax are that it is not

---

**2.** An amendment to section 349.212, subd. 5, effective July 1, 1987, for the first time authorized a limited tax on charitable gambling to be imposed by cities. 1987 Minn.Laws ch. 268, art. 15, § 3. The tax, however, may not exceed 3 percent of gross receipts less prizes paid out, and is in lieu of all other local taxes. The tax

may only be used to cover the cities' regulatory expenses. The ordinance in question clearly does not fit the requirements of subdivision 5. The ordinance amount is 10 percent of net profits, and the money goes to a different purpose. The July 1, 1987 amendment therefore does not validate or invalidate the ordinance.

a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority in the exercise of the taxing power. *Id.; see also Black's Law Dictionary* 1307 (5th ed. 1979) (defining tax similarly). Regulation is "rule or order having force of law." *Black's Law Dictionary* 1156 (5th ed. 1979).

■ A required contribution to a fund operated by the city for public purposes is clearly within the general definition of a tax. However, because of the unique nature of charitable gambling revenue, we find the ordinance does not impose a tax.

Profits from charitable gambling must go to either "lawful purposes" or expenses authorized by the charitable gambling board. Minn.Stat. § 349.15 (1988). "Lawful purposes" is defined to include various charitable causes. *See* Minn.Stat. § 349.12, subd. 11 (1988). The youth athletic groups in St. Paul clearly qualify as a lawful purpose. Thus, the VFW could have voluntarily contributed to these groups. The city's ordinance therefore does not increase the net burden of the VFW; the obligation to pay all profits to lawful purposes and authorized expenses remains the same. The ordinance merely dictates the charitable purpose to which a percentage of the net profits must go. Thus, the ordinance is a "more stringent regulation," and is not a tax.

This holding does not necessarily entitle the city to seek back payments. Failure to pay taxes generally results in liability for the amount owed, plus interest and penalties. *See, e.g.,* Minn.Stat. § 294.03 (1988) (gross earnings taxes); Minn.Stat. § 279.01 (1988) (real estate taxes). Failure to obey licensing regulations, on the other hand, generally results in monetary fines and license restrictions. *See, e.g.,* Minn.Stat. §§ 349.161, subd. 6 (1988) (gambling equipment distribution licenses); 349.16, subd. 1 (1988) (gambling organization licenses); 349.151, subd. 4(8) (1988) (civil penalties for failure to comply with licensing provisions).

The city has placed itself in the unenviable position of asserting its ordinance is not a tax, while attempting to enforce it as if it were. The city may impose whatever sanc-

tions are authorized for violations of regulatory provisions, including possible license revocation. The sanctions, however, may not amount to a tax on charitable gambling proceeds. The ordinance is valid to the extent it does not increase the total burden on the VFW above the amount of profits it earned in the period before June 1, 1987. The city's attempt to collect money that has already been paid out to charitable purposes or authorized expenses is nothing more than a tax, barred by statute.

We hold, therefore, that the city ordinance was valid prior to June 1, 1987, but the city may not enforce the ordinance by demanding the VFW pay revenue to the city fund if the revenue from that period has previously been spent lawfully. To the extent the revenue has not been spent, the city is entitled to payment.

**B. June 1, 1987 to July 1, 1989.**

■ An amendment effective June 1, 1987, added three sentences to the existing text of section 349.213, subd. 1, stating: *The authority granted by this subdivision does not include the authority to require an organization to make specific expenditures of more than ten percent from its net profits derived from lawful gambling.* For the purposes of this subdivision, net profits are profits less amounts expended for allowable expenses. *A statutory or home rule charter city or a county may not require an organization conducting lawful gambling within its jurisdiction to make an expenditure to the city or county as a condition to operate within that city or county, except as authorized under section 349.16, subdivision 4, or section 349.212.*
1987 Minn. Laws ch. 327, § 21 (effective June 1, 1987) (emphasis added). The last relevant amendment to section 349.213, subd. 1 took effect on July 1, 1989. The question is whether the ordinance was valid during the interim period.

The language of the June 1, 1987 amendment suggests that the legislature believed cities had a preexisting power to require specific expenditures of at least 10 percent

of net profits. We have construed the power to adopt "more stringent regulations" to permit such a requirement. The city lowered its required contribution amount from 20 percent to 10 percent of net profits, in an attempt to comply with the June 1, 1987 amendment. However, the amendment also prohibited expenditures to the city as a condition to operate. The issue is therefore whether the ordinance, by requiring contributions to a city-operated fund for the benefit of charitable groups, required an "expenditure to the city."

The first part of the amendment authorized expenditures directly to charitable groups specified by the city. The second part of the amendment appears to have been intended to prevent the city from specifying itself as the charitable recipient of 10 percent of net profits. We do not think payments to a fund operated by the city defeats the legislature's intent, provided that no part of the fund goes to the city. We hold, therefore, that the June 1, 1987 amendment did not invalidate the ordinance.

C. July 1, 1989 to present.

The final period begins with amendments to Minn.Stat. § 349.213, subd. 1, effective July 1, 1989. The amendments added another sentence and a new paragraph to section 349.213, stating:

> ; provided, however, that *an ordinance requirement that such organizations must contribute ten percent of their net profits* derived from lawful gambling to a fund administered and regulated by the responsible local unit of government without cost to such fund, for disbursement by the responsible local unit of government of the receipts for lawful purposes, *is not considered an expenditure to the city or county nor a tax* under section 349.212, and is valid and lawful.
>
> A statutory or home rule city or county may by ordinance require that a licensed organization conducting lawful gambling within its jurisdiction expend all or a portion of its expenditures for

lawful purposes on lawful purposes conducted or located within the city's or county's trade area. Such an ordinance must define the city's or county's trade area and must specify the percentage of lawful purpose expenditures which must be expended within the trade area.

1989 Minn.Laws ch. 334, art. 2, § 44 (effective July 1, 1989); 1989 Minn.Laws ch. 335, art. 1, § 220 (effective July 1, 1989) (emphasis added). These amendments, for the first time, provide express authorization for a 10 percent required contribution ordinance. There can be no doubt that the city's ordinance is now valid. The trial court is reversed as to its holding that the ordinance cannot be applied to the VFW after July 1, 1989.

II.

 The trial court concluded the city was equitably estopped from enforcing the ordinance against the VFW. We disagree. The application of equitable estoppel is ordinarily a question of fact, unless only one inference can be drawn from the facts, in which case it is a question of law. *In re Westling Manufacturing, Inc.,* 442 N.W.2d 328, 331 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. Aug. 25, 1989). Each case stands on its own sets of facts, which must be proved by a fair preponderance of the evidence. *Halverson v. Village of Deerwood,* 322 N.W.2d 761, 767 (Minn. 1982). The facts themselves must be clear, positive and unequivocal in their implications. *Id.* Municipal corporations are afforded extra protection against estoppel. *Id.* Nonaction generally is insufficient as a basis for estoppel against a municipal corporation. *Id.* However, estoppel is appropriate where a party demonstrates that the municipality, through language or conduct, induced the party to rely, in good faith, on this language or conduct to his injury, detriment, or prejudice. *Ridgewood Development Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980); *see also, Dege v. City of Maplewood,* 416 N.W.2d 854, 856 (Minn.Ct. App.1987).

 Estoppel is inapplicable to this case. The allegedly wrongful conduct was

either (1) failure to notify the VFW of the liability, or (2) continuing to relicense the VFW after it became delinquent. With respect to the alleged failure to notify, the VFW is charged with constructive knowledge of published ordinances. *Cf. Dege*, 416 N.W.2d at 857 (constructive knowledge of special use permit). Thus, the general rule that inaction does not form the basis for estoppel of a municipality applies. As to the city's relicensure of the VFW after it became delinquent, that action does not justify estoppel either. The city's relicensure did not certify that the VFW was in compliance with all regulations. At most the relicensure certified that the city was unaware of any violations when it reissued the license. Thus, we find no inducement upon which to predicate estoppel.

## DECISION

The St. Paul ordinance was valid at all times. However, the enforcement of the ordinance cannot amount to a tax on charitable gambling. The VFW is therefore not liable for amounts past due that have been previously spent for lawful purposes. The city may impose other sanctions, if authorized by ordinance, for the VFW's violation of the required contribution ordinance. The city is not estopped from applying the ordinances to the VFW.

Affirmed in part, reversed in part.