NORTHWEST AIRLINES,
INC., Appellant,

v.

METROPOLITAN AIRPORTS
COMMISSION, Respondent.

No. A03–494.

Court of Appeals of Minnesota.

Dec. 16, 2003.

Thomas Tinkham, Daniel J. Brown,
John Rock, Dorsey & Whitney, LLP, 50

South Sixth Street, Suite 1500, Minneapolis, MN 55402 (for appellant)

Edward M. Laine, Connie A. Lahn, Bray M. Dohrwardt, Oppenheimer Wolff & Donnelly, LLP, 3300 Plaza VII, 45 South Seventh Street, Minneapolis, MN 55402 (for respondent)

Considered and decided by Randall, Presiding Judge, Minge, Judge, and Poritsky, Judge.*

## OPINION

RANDALL, Judge.

Appellant contests the district court's dismissal of its declaratory judgment action, in which appellant sought a determination that Ordinance 87, enacted and enforced by respondent, violated Minn.Stat. § 473.651 (2002) and is beyond respondent's authority under Minn.Stat. § 473.651. Appellant argues that it is challenging the validity of a legislative act, and thus the doctrine of exhaustion does not apply and the district court is not deprived of subject matter jurisdiction. We affirm.

## FACTS

In 1943, the Minnesota Legislature created the Metropolitan Airports Commission (respondent) to promote safe and efficient air travel throughout the state of Minnesota. 1943 Minn. Laws ch. 500, § 1. Respondent owns and operates the Minneapolis–St. Paul International Airport (MSP) as well as a system of six reliever airports in the Minneapolis–St. Paul metropolitan area. The reliever airports generally serve smaller corporate and private aircraft. They are designated as "reliever airports" because they relieve traffic and congestion from MSP, which is dedicated primarily to commercial airline operators such as Northwest Airlines (appellant).

Pursuant to Minn.Stat. § 473.651 (2002), respondent is specifically empowered to determine the charges for tenants at the airports that it operates. Under Minn. Stat. § 473.608, subd. 13(b) (2002), respondent can use funds received from any source to pay the costs of operating, maintaining, and improving any of the properties. Additionally, respondent has the power to adopt ordinances pursuant to Minn.Stat. § 473.608, subd. 17 (2002).

Due to a growing disparity between reliever airports' revenues and expenses, respondent's Board of Commissioners adopted Ordinance 87 on September 21, 1998. This ordinance established rates at reliever airports for tenants who have signed leases that contain "rental adjustment" clauses that allow respondent to amend rent unilaterally. The ordinance imposed a yearly rent increase for the approximately 800 reliever-airport tenants who have the "rental adjustment" provisions in their leases. In 2007, the yearly rent increases cease, and the rents are adjusted according to the Consumer Price Index for the Minneapolis–St. Paul area. In determining the rates for Ordinance 87, respondent sought input from many sources, including appellant and other MSP tenants. Appellant chose not to participate in the hearings.

Ordinance 87 became effective on January 1, 1999. By October 2002, appellant began to express its dissatisfaction with the level of subsidization received by the reliever airports. Appellant complained that since the inception of Ordinance 87, the reliever airports have been operated each year at multi-million dollar deficits. Because rates charged to reliever-airport tenants do not cover the total operating

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

costs of the reliever airports, revenues arising out of MSP operations are used to subsidize the costs of operating the reliever airports. Thus, appellant claimed that this deficiency results in tenants and users at MSP paying much higher rents and fees to subsidize operations of reliever airports.

To correct the situation, appellant sought a declaration in district court that Ordinance 87 is invalid because it does not comply with Minn.Stat. § 473.651. This statute requires that rental rates must be "established with due regard to the value of the property and improvements used and the expense of operation to the corporation." Appellant argued that it is in direct competition with reliever-airport tenants, and that subsidization of reliever airports puts appellant at a "competitive disadvantage." The district court determined that appellant did not exhaust the administrative remedy provided by Minn. Stat. § 473.608, subd. 17(6), and thus the court dismissed the case for lack of subject matter jurisdiction. This appeal followed.

## ISSUE

Did the district court commit reversible error by dismissing appellant's case for lack of subject matter jurisdiction because appellant did not exhaust its administrative remedies?

## ANALYSIS

 Appellant argues that because it is challenging the validity of a legislative act, the doctrine of exhaustion does not apply and the district court is not deprived of subject matter jurisdiction. Whether subject matter jurisdiction exists is a question of law that this court reviews de novo. *Kellar v. Von Holtum*, 605 N.W.2d 696, 700 (Minn.2000).

 The Uniform Declaratory Judgment Act provides that

.. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Minn.Stat. 555.02 (2002). A justiciable controversy must exist before the courts have jurisdiction to render a declaratory judgment. *St. Paul Area Chamber of Commerce v. Marzitelli*, 258 N.W.2d 585, 587 (Minn.1977). A justiciable controversy exists when there is a genuine conflict in the tangible interests of opposing litigants. *Leffler v. Leffler*, 602 N.W.2d 420, 422 (Minn.App.1999) (quotation omitted).

Respondent does not challenge appellant's claim that there is a justiciable controversy. In fact, respondent concedes that appellant *may* have a cause of action. What respondent argues is that a declaratory judgment action now is not the appropriate cause of action, and that the cause in controversy can be pursued by appellant only after the proper administrative remedy has been exhausted.

 Courts generally require that before judicial review of administrative proceedings will be permitted, the appropriate channels of administrative appeal must be followed. *City of Richfield v. Local No. 1215, Intl. Assn. of Fire Fighters*, 276 N.W.2d 42, 51 (Minn.1979); *Stephens v. Bd. of Regents of Univ. of Minn.*, 614 N.W.2d 764, 774 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000). Courts require exhaustion of administrative remedies to protect the autonomy of administrative agencies and to promote judicial efficiency. *Zaluckyj v. Rice Creek Watershed Dist.*, 639 N.W.2d 70, 75 (Minn.App.

2002) *review denied* (Minn. Apr. 16, 2002). The record produced during the administrative process facilitates judicial review and may also reduce the need to resort to judicial review. *Id.* But, exhaustion of administrative remedies need not be pursued if it would be futile to do so. *McShane v. City of Faribault*, 292 N.W.2d 253, 256 (Minn.1980).

■ Here, respondent argues that appellant has an administrative remedy under Minn.Stat. 473.608, subd. 17(6) (2002). This statute states:

> Any person substantially interested or affected in rights as to person or property by a rule, regulation or ordinance adopted by the corporation (respondent), may petition the corporation for reconsideration, amendment, modification, or waiver of it. The petition shall set forth a clear statement of the facts and grounds upon which it is based. The corporation shall grant the petitioner a public hearing within 30 days after the filing of the petition.

Minn.Stat. 473.608, subd. 17(6). Because appellant filed a declaratory judgment action rather than filing a petition to commence its available administrative remedy under this statute, the essence of the appeal is that, given the concurrent applicability of Minn.Stat. 473.608, subd. 17(6), and Minn.Stat. 555.02, should the principal of exhaustion of remedies be applied to this litigation?

Appellant argues that even though Minn.Stat. § 473.608, subd. 17(6), provides an administrative remedy, appellant is not required to exhaust its administrative remedies because the statute is permissive rather than mandatory. The statute states that "[A]ny person substantially interested or affected in rights as to person or property by a rule, regulation or ordinance adopted by the corporation (respondent), *may* petition the corporation...."

Minn.Stat. § 473.608, subd. 17(6) (emphasis added). Appellant argues that "may" is permissive and "shall" is mandatory, and thus the exhaustion of administrative remedies is not required under the statute.

Case law supports the district court's ruling that Minn.Stat. § 473.608, subd. 17(6) is mandatory rather than permissive. In *Counties of Blue Earth v. Minn. Dept. of Labor Indus.*, 489 N.W.2d 265 (Minn. App.1992), the Prevailing Wage Statute provided that "[A] person aggrieved by a decision of the commissioner after reconsideration *may* within 20 days after the decision petition the commissioner for a public hearing as in a contested case under sections 14.57 to 14.61." Minn.Stat. § 177.44, subd. 4 (1990). The court in *Counties of Blue Earth* held that under this statute, the counties were required to exhaust their administrative remedies before bringing an action to enjoin enforcement of the prevailing wage rate. *Counties of Blue Earth*, 489 N.W.2d at 268.

The statute in *Zaluckyj*, also contains language similar to Minn.Stat. § 473.608, subd. 17(6). The statute at issue in *Zaluckyj* stated that "[A]n individual or an entity interested in or affected by a drainage system *may* file a petition to repair the drainage system." Minn.Stat. § 103E.715, subd. 1 (2000). *Zaluckyj*, 639 N.W.2d at 75. Although the statute contains the word "may" rather than "shall," the court in *Zaluckyj* held that landowners were required to exhaust their administrative remedies pursuant to Minn.Stat. § 103E715, subd. 1. *Id.* at 77.

Here, Minn.Stat. § 473.608, subd. 17(6), states that an aggrieved party *may* petition respondent for reconsideration of an ordinance. The district court interpreted this language to mean that:

> [Appellant], as an entity substantially interested or affected in rights, may pe-

tition [respondent] for relief from Ordinance 87. On the other hand, it may elect to do nothing, as it did for the first few years following the adoption of the ordinance. It may also elect to lobby [respondent], as it has done since October 2002. However, if [appellant] wishes to invoke the jurisdiction of the courts, it must first invoke and exhaust the administrative remedy that is available.

This reasoning is supported by the decisions in *Counties of Blue Earth* and *Zaluckyj* wherein this court determined that the aggrieved parties must first exhaust their administrative remedies under the appropriate statutes. Therefore, we conclude that Minn.Stat. § 473.608, subd. 17(6), is mandatory rather than permissive, and appellant must first exhaust its administrative remedies pursuant to the statute.

Appellant next contends that even if the exhaustion of remedies is mandatory pursuant to Minn.Stat. § 473.608, subd. 17(6), under *Connor v. Township of Chanhassen,* 249 Minn. 205, 81 N.W.2d 789 (1957), Minnesota courts do not require exhaustion of remedies when the validity of the legislative act is challenged. In *Connor,* the plaintiffs brought a declaratory judgment action seeking to have the Zoning Ordinance for the Township of Chanhassen declared unconstitutional. *Connor,* 249 Minn. at 206, 81 N.W.2d at 792. The district court found for the plaintiffs, and the township appealed arguing that the plaintiffs should have exhausted their administrative remedies by seeking a review by writ of certiorari of the town board's action in failing to grant a petition to rezone the plaintiff's property. *Id.* at 209, 81, 81 N.W.2d 789 N.W.1d at 793. The Minnesota Supreme Court began by noting that the purpose of the Declaratory Judgments Act is to afford an alternative remedy that can be used whether or not further relief is or could be claimed. *Id.*

The court stated that in a suit to test the validity of a municipal ordinance, the rule is "[T]he existence of another adequate remedy does not preclude a judgment for a declaratory relief in cases where it is appropriate." *Id.,* 81 N.W.2d at 793–94 (quoting *Barron v. City of Minneapolis,* 212 Minn. 566, 569, 4 N.W.2d 622, 624 (1942)). Because the supreme court was presented with a controversy as to legal rights that required judicial interpretation, the court held that the declaratory judgment action was an appropriate remedy and the plaintiffs were not required to exhaust their administrative remedies. *Id.,* 81 N.W.2d at 794.

■ Respondent argues that *Connor* is distinguishable from the case at hand because unlike *Connor,* appellant is not challenging Ordinance 87 on a constitutional basis. We agree. A constitutional challenge is a controversy that requires judicial interpretation. *See Neeland v. Clearwater Mem. Hosp.,* 257 N.W.2d 366, 368–69 (Minn.1977) (stating that an administrative agency lacks subject matter jurisdiction to decide constitutional issues because those questions are within the exclusive province of the judicial branch). In contrast, appellant is arguing that Ordinance 87 is invalid because the rental rates set forth in the ordinance were not established with *due regard* pursuant to Minn.Stat. § 473.651. Because appellants claim was not brought on constitutional grounds, the case is distinguishable from *Connor.*

Appellant contends that the fact that *Connor* concerned a constitutional claim is of no importance because the claim in *Montgomery v. Minneapolis Fire Dept. Relief Ass'n,* 218 Minn. 27, 15 N.W.2d 122 (1944), was not brought on constitutional grounds. *Montgomery* was cited in *Connor* for the proposition that the general purpose of the Declaratory Judgments Act

is to afford an alternative remedy that can be used whether or not further relief is or could be claimed. *Connor,* 81 N.W.2d at 793 (citing *Montgomery v. Minneapolis Fire Dept. Relief Ass'n,* 218 Minn. 27, 15 N.W.2d 122 (1944)). The court stated this rule even though the plaintiff in *Montgomery* was not challenging the constitutionality of the agency's legislative act.[1] Thus, appellant claims that under *Montgomery,* appellant is not required to exhaust its administrative remedies because the Declaratory Judgment Act affords it another remedy when it is challenging the validity of an ordinance.

Here, we really do not have a bona fide challenge to the validity or constitutionality of Ordinance 87. We simply have appellant's practical argument that rates were set too low for other airports, so appellant has to pay too much. That is the essence of appellant's argument, and that is what differentiates this case from appellant's cites. In those cases, people with grievances had direct access under the doctrine of "futility," because there is no sense in asking for relief under a statute or ruling, and a chance to exhaust remedies under that statute, when the claim is that the statute is illegal or unconstitutional from the start. That is not our case. Appellant calls the ordinance a violation of state law, and an ordinance interfering with its constitutional right to due process, but in reality its grievance just comes down to money. If the rates for the other tenants at the regional airports were set higher or if overall respondent's expenses were lower, the regional airports would be paying a higher percentage of their own upkeep, and thus, the main terminal at MSP would have to contribute less. Appellant does not attack the power of re-

spondent to levy rates. The statute granting that power to respondent is too clear to argue. Appellant is just claiming the rates at reliever airports are "too low."

Our affirmance on the trial court's declination of jurisdiction is not to be construed as a comment favoring the merits of respondent's position that its rates are fair. Appellant makes a compelling argument that respondent appears to drag its feet in an almost legendary fashion whenever a rate challenge comes up until the court or some other outside force requires it to make a decision. Respondent claims that it is aware of appellant's concern and that it is presently conducting a study to be sure its rates for the reliever airports and the main hub are fair, reasonable, and balanced. Appellant argues "this study" will never really come to any finality and appellant wants a decision up or down by respondent so that it can commence a lawsuit. If respondent won't act on appellant's request to consider a change in the rates, appellant claims it has a right to a direct appeal now. We understand appellant's frustration. By our affirmance, we do require appellant to exhaust its administrative remedies, *but,* that means respondent is required to give appellant the rate relief it seeks or the answer, "no, we are not going to give the relief you seek." That denial of relief would mean appellant could then properly bring a direct lawsuit.

At oral argument, respondent readily conceded that appellant has to be guaranteed one right to appeal, either a direct appeal now as appellant wants, or an appeal later after administrative remedies are exhausted as respondent wants. Respondent gets its way with this affirmance. But respondent cannot put off a final resolution on giving or denying appellant rate

---

1. The plaintiff in *Montgomery* sought a declaratory judgment as to his right to receive a

pension.

relief indefinitely by coming into this court on future occasions and arguing "there is one more consultant out there we have not yet hired to look at our rate structure and until we do, there is another administrative remedy left!" Respondent repeatedly states in its brief that it has begun a review of Ordinance 87 on its own initiative. But, appellant points out that this process has stalled since the district court dismissed this action for lack of subject matter jurisdiction. Respondent points out that a reconsideration petition would require respondent to provide a hearing within 30 days. But, as appellant points out, Minn.Stat. § 473.608, subd. 17(6), does not provide a *deadline* by which respondent must take action in response to the substance of the petition. Appellant's legitimate concern is that respondent could take months and/or years under the "exhaustion rule" to consider the substance of appellant's petition; and then simply refuse to make any changes, thus forestalling for years appellant's right to start a direct lawsuit.

We understand appellant's concern, and thus we direct respondent to complete its present study within a reasonable time and formally give or deny appellant the rate relief it seeks so that if denied, appellant can properly commence the lawsuit which respondent concedes it is entitled to commence once administrative remedies have been exhausted. Respondent claims the benefit of an administrative remedy. It must now reasonably and quickly act to show that that is so.

We understand the dissent's point that it can be argued there is a discrepancy between the Minnesota Administrative Procedures Act (MNAPA) and the exhaustion requirement respondent here relies on, which we affirm. However, a change to the MNAPA appears to be a change for the legislature and not this court, particu-

larly when change to the MNAPA has not been raised and is not an issue. Although not illogical, we have no precedent mandating that the MNAPA controls this case.

Finally, we agree with the dissent that in the last five years, the economics of the air travel industry have changed, and we agree with the dissent that a remand to respondent (which is what respondent wants and which is what we order today) is a better way to review the ordinance and build a record for appellate review than a direct lawsuit. These parts of our agreement with the dissent, as the dissent points out, support our decision to affirm.

## DECISION

Appellant did not really challenge the validity or constitutionality of an ordinance; it wants a rate change for others, meaning the others will pay more and appellant will pay less. That may ultimately be the way equity sees it, but that is not our issue. We conclude appellant is required to exhaust its administrative remedies before commencing a direct lawsuit. Because appellant is required to exhaust its administrative remedies, we hold the district court properly dismissed appellant's claim, at this time, for lack of subject matter jurisdiction.

**Affirmed.**

MINGE, Judge (dissenting)

I respectfully dissent. The requirement of exhaustion is misapplied in this case for several reasons.

First, the Minnesota Administrative Procedures Act (MAPA) does not require such exhaustion. Minn.Stat. § 14.44 (2002). It provides:

The validity of any rule may be determined upon the petition for a declaratory judgment thereon, addressed to the court of appeals, when it appears that the rule, or its threatened application,

interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner.... *The declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question,* and whether or not the agency has commenced an action against the petitioner to enforce the rule. (Emphasis added.)

Although respondent Metropolitan Airport Commission (MAC) is not a state agency, it was created by the state legislature, it operates on a regional basis, and its rule-making prerogatives parallel those of a state agency. If the legislature permits challenges to state-agency rules without a prior request to the agency for reconsideration of the rule, it is illogical and confusing for this court to create such a requirement as a condition of challenging the rule of a local or regional agency. Absent a statute or clear caselaw requiring disparate policies, we should have a consistent rule in our state.

Second, it does not appear necessary for MAC to reconsider Ordinance 87 to ensure that this court has an adequate record for review. The question presented to this court is the validity of Ordinance 87 in light of statutory limits on the scope of MAC's discretion to subsidize various operations. Context for judicial consideration of this question already exists; MAC has a record from when the original Ordinance 87 was adopted. Although MAC does emphasize that the air-travel industry has gone through significant upheaval in the last five years and that Ordinance 87 needs to be revisited, it does not claim that a new record is necessary to review the legal question raised by NWA. If more is needed, the district court could supplement the MAC record.[2]

Third, caselaw from other states and federal courts does not require that private parties petition agencies for reconsideration prior to initiating a judicial challenge to the rule. For example, in the case of *Rocky Mtn. Oil & Gas Ass'n v. State,* 645 P.2d 1163 (Wyo.1982), a declaratory judgment action was brought to invalidate rules and regulations of that states Environmental Quality Council on the ground that they exceeded the powers and jurisdiction of the Council. In holding that a declaratory judgment action was available to the plaintiffs as an independent action, separate and apart from a petition for review of administrative action, the court stated that

where the relief desired is in the nature of a substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created, the action should not be entertained. *If, however, such desired relief concerns the validity and construction of agency regulations,* or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, the action should be entertained. This is no more than that obviously and plainly provided for in the language of the Uniform Declaratory Judgments Act.

*Id.* at 1168–69 (emphasis added). Other states are in accord with this reasoning and do not require exhaustion when the plaintiff is challenging the validity of an agency rule or ordinance. *See, e.g., City of Miami Beach v. Perell,* 52 So.2d 906, 907 (Fla.1951) (holding that exhaustion of ad-

**2.** Under MAPA, appeals of state-agency rules come straight to this court with neither a district court proceeding nor agency reconsideration to create a record. By contrast, judicial review of MAC action starts with the district court. Query, does multi-layered judicial review justify less emphasis on exhaustion?

ministrative remedies is not required before proceeding to court to make a "general attack on the validity of the ordinance"); *Bio–Medical Lab., Inc. v. Trainor,* 68 Ill.2d 540, 12 Ill.Dec. 600, 370 N.E.2d 223, 227 (1977) (stating that exhaustion is not required when an administrative rule asserting administrative authority is challenged on its face as not authorized by the enabling legislation); *Billis v. City of Toledo,* 63 Ohio App.2d 188, 410 N.E.2d 767, 768 (1977) (stating that an action for declaratory judgment may be entertained where the construction or validity of administrative regulation is of concern, even if an alternative administrative remedy is available); *Garcia–Marroquin v. Nueces County Bail Bond Bd.,* 1 S.W.3d 366, 378 (Tex.App.1999) (stating that exhaustion of administrative remedies is not required where the action seeks declaratory judgment concerning the validity or applicability of an agency rule).

Federal caselaw also supports the proposition that exhaustion is *not* required when the challenged agency action presents a clear and unambiguous violation of statutory rights. *See, e.g., McKart v. United States,* 395 U.S. 185, 197–98, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969) (stating that the requirements of the exhaustion doctrine are not applicable where the question is solely one of statutory interpretation ... [and t]he resolution of th[e] issue does not require any particular expertise on the part of the [arbitrator]....); *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 245 (3d Cir.1980) (stating exhaustion of administrative remedies is not required when challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights).

In this case appellant Northwest Airlines, Inc. (NWA) claims MAC Ordinance 87 is invalid for failure to comply with the requirements of Minn.Stat. 473.651 (2002).

MAC concedes that the ordinance does not charge rental rates that cover its costs but claims that under other statutes it has authority to subsidize its services. Although the majority is correct that at its core this is a money dispute, that characterization does not accurately analyze the legal framework of the controversy. The parties disagree over the scope of MACs discretion under the statutes. NWA seeks judicial definition of the statutory limits on that discretion, not a judicial determination of the correct rental rate. The caselaw from other states and federal courts tells us that the judiciary is at least, if not better, qualified to resolve questions of the reach of agencies statutory charter. Indeed, agencies may be less than objective on such questions.

Fourth, there is an economy in the use of resources if the courts are involved in the evaluation of MAC Ordinance 87 at this stage. MAC first adopted the ordinance in 1998. The record indicates that over 800 leases have terms that rely on the ordinance. Since 1998, NWA and MAC have been sparring over the scope of MAC's discretion to subsidize various operations and the limits on such subsidies. With all these leases in place, it will be exceedingly difficult for MAC to identify the limits on its own discretion and the resulting validity of Ordinance 87 or what may be permissibly done in a new ordinance. Judicial determination of the validity of Ordinance 87 is important for a fresh MAC look at the subject. Without the opportunity for judiciary consideration at this stage, we are undoubtedly creating a situation where three or more rounds of appeals and MAC proceedings will be needed. This gives the term "exhaustion" an ironic new meaning for the parties.

Fifth, Minnesota caselaw does not require the result reached by the majority. *See, e.g., Connor v. Township of Chanhas-*

*sen,* 249 Minn. 205, 81 N.W.2d 789 (1957); *Montgomery v. Minneapolis Fire Dept. Relief Ass'n,* 218 Minn. 27, 15 N.W.2d 122 (1944); *Barron v. City of Minneapolis,* 212 Minn. 566, 4 N.W.2d 622 (1942). In fact, the *Conner* case indicates exhaustion is not required. *Connor,* 249 Minn. at 209, 81 N.W.2d at 794. *Connor* held that because the court was presented with a controversy as to legal rights, exhaustion of remedies was not required and the declaratory judgment action was an appropriate remedy. *Id.* Similarly, in *Montgomery,* a case cited in *Connor,* the court reached an identical result. The plaintiff in *Montgomery* sought a declaratory judgment as to his right to receive a pension. *Montgomery,* 218 Minn. at 29, 15 N.W.2d at 123. The court stated that the general purpose of the Declaratory Judgments Act is to afford an alternative remedy which can be used whether or not further relief could be claimed. *Id.* at 30, 15 N.W.2d at 124.

Finally, as the majority opinion notes, NWA alleges that MAC is dilatory and perhaps worse in delaying consideration and resolution of the underlying matter. MAC claims that it is proceeding in good faith and points out that NWA neglected to participate in the original Ordinance 87 hearings. Although judicial review should not be granted, denied, or delayed based on sniping by the parties, the exchange of charges is troubling. The majority admonishes MAC to act promptly. Perhaps the awkwardness of enforcing this admonition is an added consideration for judicial review at this juncture.

Based on Minnesota case law and the facts and circumstances present in this proceeding, appellant should not be required to first exhaust its administrative remedies. For these reasons, I dissent.